UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS JOHN FITZGERALD,<br><br>    Plaintiff,<br><br>v.<br><br>PNCBANK, PNC MORTGAGE, a division of PNC BANK, NA, FIRST AMERICAN TITLE INSURANCE COMPANY, PIONEER TITLE COMPANY, AND MERS INC.,<br><br>    Defendants, | Case No. 1:10-CV-452-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants PNC Bank and PNC Mortgage's Motion to Dismiss (Dkt. 10). Plaintiff Douglas John Fitzgerald alleges that Defendants PNC Bank and PNC Mortgage (collectively, "PNC") violated the Fair Debt Collection Practices Act, 15 U.S.C § 1692, et seq. and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. by falsely representing that Fitzgerald owes a debt or obligation to Defendants. The Motion is fully briefed, and the Court has concluded that this matter is appropriate for determination without oral argument. For the reasons stated below, Defendants' Motion is

granted.

# BACKGROUND[1]

On July 26, 2006, Terry Caminiti executed a Deed of Trust on property located in Kuna, Idaho to secure a $122,0000 loan. National City Bank was the lender and beneficiary of the Deed of Trust. In December 2008, PNC acquired National City and, presumably, National City's interest in Caminiti's Deed of Trust. In February 2010, PNC sent Caminiti a Notice of Default notifying her that PNC intended to sell the property to satisfy the debt because Caminiti had stopped making monthly payments. *Notice of Default*, Dkt. 14-2 at 20.

On March 22, 2010, Terri L. Caminiti purported to deed all existing rights, title, and interest in the Kuna property to Moscow Combined Investments. *Assignment*, Dkt. 14-2 at 22. According to the Assignment, Plaintiff Douglas John Fitzgerald is affiliated with Moscow Combined Investments. As the supposed assignee of Ms Caminiti's interest in the Kuna property, Fitzgerald seeks "to stand in her shoes."

Fitzgerald denies that he or Caminiti entered into any sort of loan agreement or business relationship with PNC.[2] Fitzgerald sent a letter disputing the debt on June 21,

---

[1] The Background is based on the allegations contained in Plaintiff's Complaint, exhibits attached to the Complaint, and certain facts contained in documents of public record attached to Plaintiff's response brief, of which the Court takes judicial notice. *See Lyon v. Gila River Indian Community*, 626 F.3d 1059, 1079 (9th Cir.2010) ("Courts may take judicial notice of facts whose existence is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

[2] Fitzgerald denies having a relationship with any defendant, but only PNC and PNC Mortgage moved to dismiss. Thus, this decision only pertains to those two entities.

2010, but PNC failed to "verify" or "validate" the debt. Instead, according to Fitzgerald, PNC persisted in its "collection" efforts and continued to make false reports to the credit agencies "alleging delinquent credit payments." *Compl.* ¶¶ 6-10. Fitzgerald further alleges that PNC never informed the major credit report agencies that the debt was in dispute. Based on this conduct, Fitzgerald argues that PNC violated (1) the Fair Debt Collections Practices Act by failing to "verify" or "validate" the alleged debt; and (2) the Fair Credit Report Act by willfully failing to inform the major credit reporting agencies that the debt is in dispute, even after receiving notice that Fitzgerald disputed the debt.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a

defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728,

737 (9th Cir. 2009)(issued 2 months after *Iqbal*).³ The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

---

³ The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. . .." Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards adopted by *Conley,* a question arises whether the liberal amendment policy of *Harris v Amgen* still exists. Nevertheless, the Circuit has continued to apply the liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly*. *See Market Trading, Inc. v. AT&T Mobility, LLC*, 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication). Accordingly, the Court will continue to employ the liberal amendment policy.

## ANALYSIS

1.  **Fair Debt Collection Practices Act**

Congress enacted the Fair Debt Collection Practices Act (FDCPA) "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C.A. § 1692. In furtherance of this goal, the FDCPA requires and prohibits certain activities by "debt collectors" that are done "in connection with the collection of any debt." 15 U.S.C. § § 1692c (prohibits certain communications), 1692d (prohibits harassment or abuse), 1692e (prohibits false or misleading representations), 1692f (prohibits unfair practices) & 1692g (requiring validation of debts). Also, under the FDCPA, if a consumer notifies a debt collector in writing that a debt is disputed, the collector must cease collection of that debt until the debt collector verifies the debt and mails a copy of the verification to the consumer. *Id.* § 1692g(b).

PNC argues that Fitzgerald's FDCPA claim must fail because PNC does not fit the statutory definition of "debt collector." The FDCPA defines a "debt collector" as a person who uses an instrumentality of interstate commerce or the mails in a business which has the principal purpose of collecting debts, or who regularly collects debts owed to another. *Id.* § 1692a(6). The definition of debt collector does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due

another to the extent such activity...(iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692(a)(6)(F)(iii).

The allegations in the Complaint establish that PNC acquired the note and deed of trust in December 2008 – when it acquired National City Bank. But Fitzgerald did not stop making payments on the note until July 2009, and PNC did not notify Caminiti that her account was in arrears until February 2010 – more than a year after PNC acquired National City Bank. Under these circumstances, PNC does not fall under the general definition of a "debt collector" because the debt was not in default at the time PNC acquired an interest in the note and deed of trust. 15 U.S.C. § 1692(a)(6)(F)(iii). This finding is further bolstered by the legislative history of the FDCPA, which suggests that a mortgagee and its assignee, including mortgage servicing companies, are not debt collectors under the FDCPA when the debt is not in default at the time the mortgage-holder acquires the debt. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S.Rep. No. 95-382, 3-4 (1977)).

On the facts of this case and for the foregoing reasons, this Court finds that PNC is exempt from the coverage of the FDCPA as it falls within the "debt not in default" exception set forth at 15 U.S.C. § 1692a(6)(F)(iii). PNC is not, therefore, a "debt collector" under the FDCPA.

 2.  **Federal Credit Reporting Act**

Fitzgerald alleges that PNC violated the Fair Credit Report Act by willfully failing to inform the major credit reporting agencies that the debt is in dispute, even after

receiving notice that Fitzgerald disputed the debt.

To ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to consumer reporting agencies, called "furnishers" in the statute. 15 U.S.C. § 1681s-2. Section 1681s-2 sets forth responsibilities of furnishers of information to consumer reporting agencies." Subsection (a) details the duty "to provide accurate information," and includes the following duty: "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." *Id.* § 1681s-2(a)(3). The statute, however, "expressly provides that a claim for violation of this requirement can be pursued only by federal or state officials, and not by a private party." *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1162 (9th Cir. 2009) (citing § 1681s-2(c)(1)). Fitzgerald therefore has no private right of action to challenge PNC's purported failure to inform the credit reporting agencies that he disputed the debt. *Id.*

The second component of § 1681s-2, found in subsection (b), does create a private cause of action by a consumer against a furnisher of credit information. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002). It requires that a furnisher,"[a]fter receiving notice *pursuant to section 1681i(a)(2)* of this title of a dispute," *id.*§ 1681s-2(b)(1) (emphasis added), "conduct an investigation with respect to the disputed information," *id.* § 1681s-2(b)(1)(A), and "report the results of the investigation

to the consumer reporting agency, *id.* § 1681s-2(b)(1)(C). Section 1681i(a)(2) requires a consumer reporting agency to provide a furnisher of credit information with prompt notice of a dispute from any consumer. Therefore, the duty of a furnisher of credit information to investigate a credit dispute is triggered only after the furnisher receives notice of the dispute from a consumer reporting agency, not just the consumer. *See, e.g., Gorman,* 584 F.3d at 1154.

In this case, Fitzgerald has failed to allege any facts to suggest that a consumer reporting agency notified PNC that Fitzgerald was disputing the account. In fact, Fitzgerald alleges that PNC "never informed the Major Credit Reporting agencies that the alleged account is in dispute." This allegation compels the Court to conclude that PNC did not receive notice of a dispute from any consumer reporting agency. And therefore, PNC's obligation to conduct an investigation of the disputed information was never triggered. Unless Fitzgerald can allege that a consumer reporting agency reported the dispute to PNC, the FCRA does not apply to Fitzgerald claims, and Counts 2 and 3 must be dismissed.

# ORDER

IT IS ORDERED that Defendants PNC Bank and PNC Mortgage's Motion to Dismiss (Dkt. 10) is GRANTED. Fitzgerald has 30 days from the entry of this order to file an amended complaint alleging facts establishing that the *consumer reporting agency* notified PNC that the account was in dispute, rather than just Fitzgerald himself. If

Fitzgerald cannot allege such facts, his complaint will be dismissed with prejudice.

DATED: **April 21, 2011**



B. LYNN WINMILL
Chief Judge U.S. District Court